STATE OF CONNECTICUT *v.* EDWARD KEISER
(11078)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and COVELLO, Js.

Argued January 17—decision released April 30, 1985

*Eugene J. Riccio,* public defender, with whom, on the brief, was *Raymond J. Kelly,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Edward J. Caldwell,* assistant state's attorney, for the appellee (state).

PARSKEY, J. The defendant, Edward Keiser, was charged in a two count information with robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2),[1] and carrying a pistol without a permit, in violation of General Statutes § 29-35.[2] A jury

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime. . . ."

[2] "[General Statutes] Sec. 29-35. CARRYING OF PISTOL OR REVOLVER WITHOUT PERMIT PROHIBITED. EXCEPTIONS. No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this section shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined

found him guilty on both counts, and he was sentenced to an effective term of not more than sixteen nor less than nine years. The defendant appeals from the judgment of conviction, claiming that it was error to permit the state to impeach his credibility with evidence of: (1) a prior offense which was the subject of a youthful offender adjudication; and (2) a prior conviction for carrying a pistol without a permit, one of the crimes for which he was on trial. In addition, he claims error in the trial court's refusal to charge the jury specifically on the complainant's potential motive for testifying. We find error in the admission of the youthful offender adjudication for impeachment purposes. We discuss the other two issues in the event that similar problems may arise at a new trial.

The jury was presented with conflicting testimony from the principal witnesses for each side. The complainant, who was between fourteen and fifteen years old at the time of the alleged robbery, testified for the state as follows: On May 29, 1980, at about 3 p.m., he and a friend were riding on a public bus in Bridgeport.

by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.''

He was carrying on his person a watch, a tape player and some money. The defendant boarded the bus, sat near the two boys and offered to sell some marijuana to the complainant. The complainant declined the offer. After further brief conversation, the defendant opened his jacket and displayed a handgun which had been concealed under it. The complainant then turned over his watch and thirty-five cents to the defendant. When the complainant rose from his seat to move to the front of the bus, the defendant threatened to shoot him if he did not sit down again. The defendant then instructed the complainant to leave the tape player on his seat and exit the bus at the next stop. Once the complainant and his friend got off the bus, they went directly to the complainant's home nearby and related the incident to his parents, who called the police. The complainant's version of these events was substantially corroborated by the testimony of his companion, who was between thirteen and fourteen years old when the incident occurred.

The defendant testified in his own behalf as follows: On the day before the alleged robbery, he had purchased about two ounces of marijuana, which he planned to sell. When he encountered the complainant on the bus, he asked him whether he was interested in buying the drug. The complainant responded affirmatively, but stated that he had no money. The defendant agreed to trade the marijuana for the watch, the tape player and the gun. Once the transaction was completed, the complainant left the bus. The defendant continued riding for approximately fifteen to twenty minutes, at which time the police boarded the bus and placed him under arrest.

## I

A year before trial, the state provided defense counsel with a copy of the defendant's state police record in

response to a motion, granted by the court, seeking disclosure of his prior criminal record. The record provided by the state included, among other offenses, a 1977 charge of larceny in the second degree, and indicated that the defendant had been sentenced on that charge. Other than the term of the sentence imposed, there was nothing in the police record to distinguish the disposition of the 1977 larceny charge from other crimes of which the defendant had been convicted.

Prior to trial, the defendant filed a motion in limine seeking to preclude the state from impeaching his credibility with evidence of his prior convictions. At the pretrial hearing on this motion, the defendant testified that he had been arrested for larceny in the second degree on November 2, 1977, at the age of seventeen, and that he had pled guilty to the charge. He also stated that on October 17, 1978, he had pled guilty to carrying a pistol without a permit and second degree larceny. Defense counsel requested that these convictions be excluded from evidence at trial, or, in the alternative, that impeachment should be restricted to asking the defendant whether he had ever been convicted of a felony, without identifying the specific crimes involved.[3] The trial court, *McKeever, J.,* denied the motion, ruling that "the probative value of the prior record far outweighs the prejudicial effect" and that any possible prejudice could be "taken care of by cautionary instruction to the jury." The defendant took exception to the court's ruling.

---

[3] In *State* v. *Geyer,* 194 Conn. 1, 480 A.2d 489 (1984), we approved the practice of impeaching criminal defendants with evidence of unnamed prior convictions. "[T]he prudent course for a trial court faced with a decision whether to admit as evidence of credibility prior convictions for crimes that do not directly reflect on credibility is to allow the state to mention that the defendant was convicted of an unspecified crime or crimes carrying a penalty of more than one year, at a certain time and place. The defendant's character, from which the jury might draw an inference of dishonesty, would thus be sufficiently impugned without the extraordinary prejudice that sometimes follows when the prior crime is specifically named." Id., 16.

During the state's cross-examination of the defendant at trial, the following occurred:

"Q. By the way, are you the same Edward Keiser who was convicted of larceny in the second degree on November 2, 1977?

"A. Yes.

"Q. And are you the same Edward Keiser who was convicted of carrying a pistol without a permit on October 17, 1978?

"A. Yes."

At that point, defense counsel objected to "that line of questioning." The court overruled the objection and an exception was taken.[4]

Subsequent to trial and sentencing, defense counsel learned that the defendant had been granted youthful offender status with regard to the 1977 larceny charge. See General Statutes §§ 54-76b through 54-76o. The defendant claims that he was improperly impeached by the state's cross-examination regarding his "conviction" for that offense, and that the resulting harm warrants a reversal of his conviction. We agree.

General Statutes § 52-145 (b) provides that "conviction of crime may be shown for the purpose of affect-

---

[4] At the conclusion of trial, the court included the following in its charge to the jury: "Now in this case it is my recollection that there was evidence here that the Defendant, the accused here, Mr. Keiser, has been previously convicted of some crimes. Now that evidence of those convictions you are entitled to consider as affect his credibility as a witness. We have a Statute in Connecticut which provides that no person shall be disqualified as a witness because of a conviction of a crime, but such conviction may be shown to affect his credibility or believability. The fact that a witness was convicted of a crime does not disqualify him as a witness and it should not be considered by you in that light. . . . It is not the intention of the legislature, however, to make such a person necessarily entitled to full credit. The fact of the conviction is one of the facts for you to take into consideration in determining his credibility or believability."

ing [a witness'] credibility." We have construed that statute to permit impeachment only by those crimes carrying a maximum permissible penalty of imprisonment for more than one year. See *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), and cases cited therein. Under General Statutes § 54-76k, "no youth shall be denominated a criminal by reason of such determination [of youthful offender status], nor shall such determination be deemed a conviction." Because the 1977 larceny charge resulted in a determination that the defendant was a youthful offender and not in a criminal conviction, it was inadmissible for impeachment purposes under General Statutes § 52-145.[5]

We cannot agree with the state that this error was harmless. The defendant's credibility was a crucial factor in this case. If the jury had believed his version of events rather than that of the complainant, he would have been acquitted of the robbery charge, by far the more serious of the two offenses for which he was on trial.[6] The admission of the youthful offender adjudication as a criminal conviction and the trial court's reference to the defendant's "convictions" in the jury instructions could have had a substantial impact on the jury's assessment of the defendant's credibility. Although there was evidence before the jury of the defendant's 1978 conviction for carrying a pistol without a permit,[7] this fact is not sufficient to render the improper admission of the 1977 larceny offense harm-

---

[5] It is clear from the record that General Statutes § 52-145 was the basis upon which the court decided that the convictions were admissible in ruling on the defendant's motion in limine. The trial court's jury instructions indicate that this same provision governed their admissibility at trial. See footnote 4, supra.

[6] The defendant was sentenced to a term of eight to sixteen years on the robbery count, and received only a one year term on the charge of carrying a pistol without a permit.

[7] The admissibility of this evidence is considered, and decided favorably to the state, later in this opinion.

less.[8] "[P]rior convictions that are admissible for impeachment purposes may be segregated into two general categories. First are those crimes that by their very nature indicate dishonesty or tendency to make false statement. *State* v. *Nardini,* [187 Conn. 513, 523–24, 447 A.2d 396 (1982)]. Beyond the obvious violations such as perjury or false statement, we have recognized that crimes involving larcenous intent imply a general disposition toward dishonesty such that they also fall within this category. *State* v. *Carter,* [189 Conn. 631, 643, 458 A.2d 379 (1983)]. Convictions of this sort obviously bear heavily on the credibility of one who has been convicted of them." *State* v. *Geyer,* 194 Conn. 1, 12, 480 A.2d 489 (1984). By contrast, this court has viewed a "conviction for carrying a pistol without a permit [as] related to credibility only on the theory of malus in uno, malus in omnibus." *State* v. *Nardini,* supra, 527. Since we have considered a larceny conviction to be far more probative on credibility than a conviction for carrying a pistol without a permit, we conclude that the improper admission of the former was prejudicial to the defendant despite the proper admission of the latter.

The possibility of prejudice was enhanced by the trial court's instructions to the jury regarding the bearing of the defendant's prior "convictions" on the issue of his credibility. Because the youthful offender adjudication did not constitute a conviction with which the defendant could properly be impeached, "the trial court's instructions on the issue of prior convictions were not accurate in law, not adapted to the issues and

---

[8] The 1977 larceny offense and the 1978 conviction for carrying a pistol without a permit were the only crimes with which the defendant was impeached. No reference was made at trial to the defendant's 1978 conviction for larceny, and we are thus unable to consider the existence of this conviction in our assessment of whether the erroneous admission of the youthful offender adjudication was harmful.

not an adequate guide to the jury in reaching a correct verdict." *State* v. *McDermott,* 190 Conn. 20, 25, 458 A.2d 689 (1983).

Finally, the defendant may have been prejudiced by the similarity between the inadmissible larceny offense and the charge of first degree robbery for which he was on trial. This is a factor of "primary importance" in deciding whether a prior conviction is admissible for impeachment purposes. *State* v. *Nardini,* supra, 522. "Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." Id.; *State* v. *Geyer,* supra, 14; *State* v. *Carter,* supra, 642–43. This prejudice stems from "the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' " *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). The prior conviction need not be identical to the current charge for such prejudice to arise, but there must be a "close relationship" between the two. *State* v. *Iasevoli,* 188 Conn. 325, 328, 449 A.2d 996 (1982). In this case, the inadmissible prior offense, larceny, is itself an essential element of the charged crime of robbery; General Statutes § 53a-133; and the court correctly instructed the jury to that effect. Under these circumstances, the admission of the youthful offender adjudication as a prior conviction for larceny may well have contributed to the jury's guilty verdict on the robbery charge.

The fact that the 1977 larceny offense was admitted into evidence under the mistaken belief, fostered by the faulty police record, that it had resulted in a criminal conviction is of no consequence in our determination of harmful error. See *State* v. *McDermott,* supra. The defendant, who apparently held the sincere belief that his status as a youthful offender amounted to a con-

viction of the underlying crime, should not be required to suffer any prejudice that occurred as a result of the misinformation contained in records provided by the state.

## II

Since our finding of harmful error in the admission of the youthful offender adjudication necessitates a new trial, we discuss the remaining claims of error to the extent that similar problems may arise at a new trial.

## A

The defendant argues that the trial court abused its discretion by allowing the state to impeach him with evidence of his 1978 conviction for carrying a pistol without a permit. Pointing to the three-prong test for determining the admissibility of a prior conviction, namely "(1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time"; State v. Nardini, supra, 522; the defendant claims that the first two prongs militate against permitting impeachment with this offense.[9] We disagree.

While we recognize that a conviction of carrying a pistol without a permit is of limited probative value on the issue of credibility; State v. Nardini, supra, 527; we do not see how the defendant could have been prejudiced by its admission under the circumstances of this case. In claiming that prejudice arose because the prior offense was identical to one of the crimes charged; see State v. Geyer, supra, 14; State v. Carter, supra, 643–44; State v. Nardini, supra, 522; the defendant ignores his own direct testimony in the case. According to the defendant, he obtained the pistol from the

---

[9] The defendant does not assert that the 1978 conviction for carrying a pistol without a permit is remote.

complainant in exchange for some marijuana, and was thereafter arrested in possession of the gun. There was no evidence that he had a permit for the pistol, or that his possession of the weapon fell within any of the exceptions contained in General Statutes § 29-35.[10] Because even under his own version of events the defendant was guilty of the offense charged, the prejudice that might ordinarily arise from the admission of a prior conviction for an offense similar to the crime charged is absent.

"There is, of course, no per se rule prohibiting impeachment of a defendant by proof of a prior conviction of a crime similar to that for which he is being tried when that prior conviction is offered to attack his credibility." *State* v. *Binet,* 192 Conn. 618, 622, 473 A.2d 1200 (1984). In determining the admissibility of such evidence, the court is required to "weigh its probative value against its prejudicial tendency. . . . The weighing or balancing process invokes the exercise of a sound judicial discretion." (Citations omitted.) Id., 623. Since the prejudice claimed by the defendant is lacking in this case, it was not error to permit impeachment with proof of the prior conviction for carrying a pistol without a permit.

## B

The defendant's claim of error in the trial court's refusal to charge the jury specifically on the complainant's potential motive for testifying is also without merit. The defendant filed a request to charge as follows: "The motive a person has in telling his story is always to be considered by you in weighing whether or not his story is true. You may consider that [the complainant] could be subject to prosecution by the State of Connecticut for violation of our drug laws and therefore his motive for claiming that he was subject to a

---

[10] See footnote 2, supra.

robbery might well be to avoid appropriate criminal responsibility for his conduct." The court instructed the jury that "[i]n weighing the testimony of a witness . . . [y]ou should consider any possible bias or prejudice he or she might have whether for or against the State or for or against the accused, his or her interest or lack of interest of whatever sort in the outcome of the trial," but rejected the defendant's request to charge regarding the complainant's possible motive to avoid criminal prosecution. The court's ruling on this request was correct.

The defendant relies on *State* v. *Cooper,* 182 Conn. 207, 438 A.2d 418 (1980), in support of his claim that he was entitled to the requested instruction. In that case, however, "[w]e emphasize[d] . . . that in order for the request to be applicable to the issues in the case, there must be evidence . . . to support the defendant's assertion that the complaining witness was the culpable party." Id., 212. Here there was only the defendant's uncorroborated version of events to implicate the complainant in any drug-related offense. There was no evidence that the complainant had taken part in drug transactions previously, and he had no criminal record. The complainant reported the incident to his parents immediately after it occurred, and his recollection of the episode was substantially corroborated by the testimony of his companion. On these facts, the defendant's requested instruction was unwarranted and was properly refused by the court.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.