STATE OF CONNECTICUT *v.* RALPH D. BYRD
(11365)

FOTI, FREEDMAN and SPEAR, Js.

Argued January 14—decision released May 17, 1994

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Meryl Anne Spat,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *John A. Connolly,* state's attorney, and *Robert C. Brunetti,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] The defendant claims that the trial court improperly (1) failed to instruct the jury on the motivation of the state's witness as a complaining witness and a possibly culpable party, (2) instructed the jury on the duty to retreat, and (3) admitted into evidence the defendant's statement to the police. He also alleges that there was insufficient evidence to allow the jury to find his defense of self-defense disproved beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. The defendant, the victim, who was the defendant's brother, and Mark Griffin were involved in selling narcotics. On April 4, 1991, after a meeting with their drug supplier, Kojak, the defendant brought forty

---

[1] The jury found the defendant guilty of manslaughter in the first degree as a lesser included offense of the charge of murder in violation of General Statutes § 53a-54a (a).

vials of crack cocaine to the apartment that the three men shared. There, the defendant drank and played cards with Griffin and the victim and they used some of the crack cocaine. During the card game, the brothers argued about how they should share the drugs.

Later, Kojak stopped by the apartment to collect money from Griffin. The victim told Kojak that he wanted to receive his own drugs to sell. Shortly after Kojak left, the defendant and the victim had another argument, which ended with the victim grabbing the plastic bag containing the crack cocaine, putting it into his pocket, and walking toward the back door. The defendant followed and asked for the return of the drugs, reminding the victim that he was responsible to Kojak for them. The victim said that the drugs were his compensation for taking all the risks in making the drug sales.

The defendant first blocked the back door, and then blocked the front door when the victim tried to exit by that route. On the way to the front door, the defendant picked up a knife from the kitchen counter. He grabbed the victim with one hand and poked and jabbed at the victim's stomach and chest with the knife. The victim backed away from the defendant into the living room. The defendant followed and, as the two struggled violently, the defendant told the victim to let him go or he would stab the victim in the back. The defendant stabbed the victim in the back, and when the victim released him the defendant ran out the back door.

Later, the defendant turned himself in to the police. In the meantime, the victim had been pronounced dead. The cause of death was determined to be a five to six inch deep stab wound to the back. The victim also had three nonlethal stab wounds to the front of his body. The defendant admitted on two occasions, to persons other than the police, that he had either stabbed or killed his brother.

# I

## A

The defendant first claims that the trial court improperly failed to charge as requested on Griffin's motivation as a complaining witness and possibly culpable party.[2] The trial court's charge neither characterized Griffin as a complaining witness, nor suggested that Griffin himself could have been subject to prosecution depending only on the veracity of his account of the crime.[3]

Griffin, the state's chief witness, testified and was cross-examined at length. He testified that the defendant blocked the victim's exit, and that the victim forcibly attempted to remove the defendant from the

---

[2] The defendant requested the following charge: "In cases such as this case where the complaining witness could himself have been subject to prosecution depending only on the veracity of his account of the particular alleged criminal transaction in question, the court must specifically charge you in reference to the credibility of Mark Griffin in light of any motive he might have for testifying falsely and inculpating the accused, Ralph Darryl Byrd.

"In considering and weighing the testimony of the state's witness, Mark Griffin, the claimed eyewitness of the homicide, you will test it by those rules of probability or improbability by which human conduct and the motives impelling or influencing men to do certain things are usually applied. You may consider his appearance and demeanor as a witness, the reasons given actuating him in telling his story to the state authorities, and among these tests, to consider whether any motive has appeared or any reason is apparent why he should seek to fasten so grave a crime upon the accused, if his story is untrue, for the presence or absence of a motive is often an important matter to consider in a determination of the truth or falsity of a story. You must consider and compare his testimony with all the other testimony and evidence in the case. *State* v. *Cooper,* 182 Conn. 207, [210–12, 438 A.2d 418 (1980)]; *State* v. *Keiser,* 196 Conn. 122, [132–33, 491 A.2d 382 (1985)]; *State* v. *Cianflone,* 98 Conn. 454, [463–65, 120 A. 347] (1923)."

[3] The court's instruction substantially followed the remainder of the defendant's request. The court is under no duty to charge in the identical language requested if its charge is accurate, adequate, and in substance, properly includes material portions of the request. *State* v. *Tatum,* 219 Conn. 721, 735, 595 A.2d 322 (1991).

doorway. He further indicated that when the defendant jabbed the knife at the victim, the victim grabbed the defendant, placed him in a headlock and began banging the defendant's head against the wall. When the struggle ended and the victim let the defendant go, the defendant ran out of the apartment, and the victim sat down on the couch and gave Griffin the drugs from his pocket. Griffin testified that the victim said that he was all right and that he just wanted to rest. Returning later to check on the victim, Griffin found him unresponsive and he called 911. Griffin denied stabbing the victim.

The defendant argues that the interest, motive and credibility of both the defendant and Griffin were the heart of the case. If the defendant did not stab the victim, Griffin was the only other person who could have. The jury was specifically instructed that the defendant's interest in the outcome of the case should be factored into his credibility. The defendant argues that the trial court should have given a similar charge directed at Griffin. We do not agree.

In order to be entitled to a charge regarding the complainant's possible motive to avoid criminal prosecution, the defendant must show that the witness is the complaining witness and that there was evidence to support the assertion that the complaining witness was the culpable party. *State* v. *Keiser,* 196 Conn. 122, 133, 491 A.2d 382 (1985); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980).

Unquestionably, Griffin was a witness for the state. That alone, however, does not qualify him as a "complaining witness."[4] Griffin was not a victim, nor in any

---

[4] A complaining or prosecuting witness is "the person who was chiefly injured, in person or property, by the act constituting the alleged crime . . . and who instigates the prosecution . . . ." Black's Law Dictionary (6th Ed. 1990).

other way does he qualify as a complaining witness. See *State* v. *Cooper,* supra, 182 Conn. 212 n.5 (criminal defendant is not entitled to instruction singling out *any* state's witness regarding his possible motive for falsifying testimony, but only as to *complaining* witness who could himself be subject to prosecution); see also *State* v. *Smith,* 16 Conn. App. 223, 229, 547 A.2d 102 (1988) (where witness was not complaining witness, court did not abuse its discretion in refusing to give special cautionary instruction as to motive).

Further, the evidence introduced at trial was clearly insufficient to implicate Griffin as a culpable party. To be sufficient, evidence must directly connect the third party to the crime with which the defendant is charged. *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987). It is not enough to show that the party had a motive to commit the crime; *State* v. *Marshall,* 166 Conn. 593, 601, 353 A.2d 756 (1974); nor is it enough to raise a mere suspicion that he may have committed the crime.[5] *State* v. *Hernandez,* 224 Conn. 196, 202, 618 A.2d 494 (1992). On the basis of the facts presented, the court properly refused to instruct as requested by the defendant.[6]

---

[5] The defendant argues that the corroboration of his testimony by Cynthia Clark, who lived in the apartment next door, along with other physical evidence was sufficient to establish culpability. The testimony and evidence merely confirmed that an altercation took place; nothing suggested that Griffin was the culpable party.

[6] The court did instruct the jury that the state must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime. Any evidence pointing to the culpability of Griffin could be used to raise a reasonable doubt as to the guilt of the defendant. Griffin's prior felony conviction and any inconsistencies in his testimony could be considered in assessing his credibility. The court also gave a general instruction as to witness credibility and instructed that the jury should consider the witnesses' appearances, biases, prejudices, interests, and abilities to observe and remember in determining their credibility. A general charge regard-

## B

The defendant also claims that the trial court improperly instructed the jury on the duty to retreat. The defendant recognizes the statutory duty to retreat and does not claim a statutory exception. General Statutes § 53a-19 (b) (1). Rather, the defendant, citing *State* v. *Moore,* 31 Conn. 479 (1863), and relying on *State* v. *Havican,* 213 Conn. 593, 569 A.2d 1019 (1990),[7] claims that the duty to retreat "doesn't apply in this type of situation because, if it is during the course of a robbery, the victim of the robbery doesn't have to retreat." We do not agree.

"When reviewing the court's instruction, our role is to determine whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Lee,* 32 Conn. App. 84, 104, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 1702 (1993).

The testimony of both the defendant and Griffin establishes that the victim took drugs that were in the defendant's possession. Although at common law the victim of a robbery may have had no duty to retreat and could even pursue his adversary to ensure his safety by using deadly force; see *State* v. *Moore,* supra, 31 Conn. 479; our statutory scheme requires retreat in lieu of using deadly force, except in certain delineated cir-

---

ing motive as strong evidence of guilt, and lack of motive as raising a reasonable doubt was also given. Under the facts of this case, these instructions were adequate. See, e.g., *State* v. *Smith,* supra, 16 Conn. App. 229 n.2.

[7] In *State* v. *Havican,* supra, 213 Conn. 602, our Supreme Court noted with regard to General Statutes § 53a-19 that "the Connecticut legislature [in choosing] to utilize the term 'great bodily harm' . . . recognized that they were not setting forth an all-inclusive list of offenses that would justify the use of deadly physical force."

cumstances. General Statutes § 53a-19.[8] "Connecticut is among a minority of jurisdictions . . . that has followed the position . . . that, before using deadly force in self-defense, an individual must retreat. Retreat is required, however, only if it can be achieved with complete safety. The underlying policy of the duty to retreat is that the protection of human life has a higher place in the scheme of social values than the value that inheres in standing up to an aggression." (Citation omitted.) *State* v. *Anderson,* 227 Conn. 518, 530, 631 A.2d 1149 (1993).

"A person is not permitted to use deadly physical force in self-defense just because that person reasonably believed that the victim was attempting to rob that person." *State* v. *Harrison,* 32 Conn. App. 687, 694, 631 A.2d 324, cert. denied, 227 Conn. 432, 632 A.2d 708 (1993). "[T]he crux . . . is not whether the defendant reasonably believed he was being robbed, but whether [he] reasonably believed that the victim was

---

[8] General Statutes § 53a-19 provides in pertinent part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform. . . ."

using or about to use deadly physical force or was inflicting or about to inflict great bodily harm. General Statutes § 53a-19 (a)." Id.[9]

The court instructed on the justifications of defense of property, defense of person, and the duty to retreat.[10] General Statutes §§ 53a-19 and 53a-21. The court originally instructed that when the "defendant knows that if he surrenders the [disputed] property that the assailant will flee without harming him, then the defendant may . . . not use deadly force but should surrender the property." In the supplemental charge, however, the court instructed that if the jury found that the victim was in the process of robbing the defendant using violence and surprise, the defendant could be acquitted under the justification of self-defense.[11]

---

[9] Either the threat of serious physical injury or the threat of great bodily harm may justify the use of deadly force. *State* v. *Roman*, 25 Conn. App. 734, 737–38, 596 A.2d 930, cert. denied, 220 Conn. 928, 598 A.2d 368 (1991). However, "[t]he use of deadly force must ultimately be reasonable in the circumstances." *State* v. *Tyson*, 23 Conn. App. 28, 37, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990).

[10] The court instructed that "[t]he law does not encourage the use of deadly force and in most circumstances, a person must retreat from the perceived harm if he is able to do so with complete safety." The court repeated this instruction in its supplemental charge but omitted the word "complete" and used only the word "safety"; see *State* v. *Anderson*, supra, 227 Conn. 529 (finding that charging as to "safety" instead of "complete safety" substantively altered meaning of General Statutes § 53a-19). Because the phrase was correctly set forth in the principal charge, the overall charge was correct.

[11] The court instructed as follows: "[I]n the case of . . . robbery there is an inherent fear of great bodily harm to the robbery victim where violence and surprise are present. And where that occurs, the law allows such person, that is, the robbery victim, to resort to deadly force in self-defense to prevent the anticipated harm, that is, the great bodily harm . . . .

"So, if you find on an examination of all the credible evidence that . . . the victim was in the process of committing a forcible robbery in which property of the defendant was being taken and withheld in which violence and surprise were present, and in which great bodily harm was being inflicted or about to be inflicted upon the defendant, then you may find that the defendant was justified in using deadly force. And under such circumstances, you may acquit him of the crime charged and the lesser included offenses."

The defendant argues that the court should have instructed that if the jury found the defendant to be the victim of robbery, then he had no duty to retreat unless and until he had secured himself from all danger. We do not agree. Our laws governing the use of deadly force in defense of person or property do not negate the duty to retreat except as delineated; the common law privilege has been extinguished by statutory mandate.

## II

The defendant next claims that the trial court improperly admitted into evidence, for impeachment purposes, an inculpatory statement that he gave to the police on the evening of the crime. He claims that the statement was involuntary and inadmissible under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.

The facts relevant to this issue are as follows. At approximately 10:45 p.m. on April 4, 1991, the defendant and Griffin went to police headquarters and were escorted to the detective bureau, where the defendant encountered his brother William and his sister Elaine. He became very emotional and stated more than once, "I killed my brother; my life is over." The defendant was escorted into another room, crying and retching. He was given a towel and allowed one-half hour to calm down, and then was arrested for violation of probation. The defendant was advised of his *Miranda*[12] rights and nodded his head in response, but made no other signs that he understood those rights.

The defendant agreed to give a statement, which was typed as the defendant spoke. The defendant gave a

[12] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

detailed narrative of the events that occurred at the apartment and answered questions by the police. While giving the statement, the defendant seemed upset and, at least twice, put his head down and cried into his hands. Both times the officer taking the statement stopped and allowed the defendant to regain his composure. It took approximately one hour to complete the statement. His speech was coherent and he gave no appearance of being under the influence of alcohol or drugs. No threats or promises were made to the defendant as inducement for the statement.

After completing the statement, the defendant read it, confirmed that it was correct, and signed it. Shortly thereafter the defendant raised his hand, acknowledged the statement to be his, verified that he had read, initialed and signed it, and affirmed that the information contained therein was true. At that time, he showed no sign of emotional upset.

Following an evidentiary hearing, the court granted the defendant's motion to suppress the statement, finding that the state had failed to sustain its burden of demonstrating that the defendant knowingly and voluntarily waived his *Miranda* rights. The court, however, found that the statement was voluntary. At trial, the defendant testified on his own behalf. The state, over the defendant's objection, was allowed to admit the defendant's statement into evidence and use it for impeachment purposes.[13]

Following the jury's verdict, the defendant filed a motion for new trial and argued that the statement was involuntary under our state constitution, article first, § 8. He also argued that the court should reconsider its ruling on voluntariness under *Colorado* v. *Connelly,*

---

[13] The trial court instructed the jury that the statement could be considered only for the limited purpose of judging the credibility of the defendant's trial testimony.

479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). The court denied the defendant's motion for a new trial.

## A

The defendant claims that the trial court misread *Connelly*, and that "police overreaching" took place because the police knew that the defendant was upset and physically ill because they saw him crying and retching.

We begin our analysis by noting that the trial court's underlying factual findings led to the conclusion that no coercive police tactics had been employed. The defendant does not challenge these factual findings.[14] Rather than asserting that coercive police tactics had been employed, the defendant argues that his visible condition alone was sufficient to make his statement "coercive."

It is clear that in *Colorado* v. *Connelly*, supra, 479 U.S. 167, a majority of the United States Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment" even though the admissions may have been made by the defendant when he was mentally ill.[15] There must be police conduct, or official coercion, causally related to the confession before the issue of voluntariness may be the cause of a due

---

[14] We would normally, on appeal, undertake an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding with respect to voluntariness is supported by substantial evidence. *State* v. *Medina*, 228 Conn. 281, 294, 636 A.2d 351 (1994); *State* v. *Smith*, 200 Conn. 465, 478, 512 A.2d 189 (1986). Because the subordinate factual findings are not contested, we will determine the issue as raised—whether the defendant's physical and emotional state rendered his statement "involuntary" under *Colorado* v. *Connelly*, supra, 479 U.S. 157.

[15] Our Supreme Court has cited to this principle in both the majority in *State* v. *Medina*, supra, 228 Conn. 295, and in the dissent. Id., 331. *(Berdon, J.,* dissenting).

process inquiry. The emotional state of the defendant and physical illness did not render the statement involuntary under *Colorado* v. *Connelly,* supra, 167.

## B

The defendant requests that we determine that his statement was involuntary under the guarantees of article first, § 8, of the Connecticut constitution[16] because the state failed to establish that his written statement resulted from the exercise of his own free will and rational intellect. The state argues that this claim is not reviewable because the defendant failed to assert the claim actively at trial and, therefore, it was not adequately preserved.

Although the defendant's written motion to suppress, filed October 30, 1991, identified article first, § 8, of our state constitution as one of several bases for exclusion of his statement, and claimed that the statement was not voluntarily made, the "motion, unaccompanied by case citation or a memorandum, otherwise failed to explicate the nature of his state constitutional voluntariness claim." *State* v. *Medina,* 228 Conn. 281, 296, 636 A.2d 351 (1994).

The defendant's primary argument during the suppression hearing was that the state had failed to show

---

[16] Article first, § 8, of the Connecticut constitution provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

a valid waiver of *Miranda* rights in violation of both the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Counsel for the defendant stated that if there was no proper waiver then the court need not reach the due process issue. He alerted the court during the hearing that police overreaching is necessary for the statement to be inadmissible under the United States Supreme Court's ruling in *Colorado* v. *Connelly,* supra, 479 U.S. 157, but noted that the issue had not yet been squarely addressed under the Connecticut constitution.[17] While this claim may not have been articulated with clarity and specificity, we cannot conclude that the record before us fails to support that the defendant raised a state constitutional claim.

The state also argues that we cannot decide the defendant's claim because the record is inadequate, the trial court having made its factual findings on the issue of voluntariness solely on the basis of federal law. We agree.[18]

"The question of voluntariness is one of fact for determination by the trial court in the exercise of its discre-

[17] Defense counsel further stated that "[i]f the court gets beyond that issue [waiver] then . . . we have the due process issue. And we would ask the court to consider the matter under what the state law would be eventually if in a situation like this the Supreme Court of our state were to address this particular issue, whether under our state constitution other factors besides police overreaching can make a statement admissible." He further argued that the defendant's statement should be deemed involuntary under the state constitution and that "under the state constitution, the factors of emotional and mental factors by themselves should be sufficient without the issue of police overreaching or police conduct."

[18] Further, the state contends that the defendant failed to assert a state constitutional challenge to the voluntariness of his statement when objecting to its admission at trial, and thereby waived that challenge as initially raised in his motion to suppress. The state also argues that the defendant has failed to brief the state constitutional issue adequately in that it is "bereft of meaningful analysis." See *State* v. *Hamilton,* 228 Conn. 234, 246 n.10, 636 A.2d 760 (1994). We find it unnecessary to address these arguments because of our determination regarding an inadequate record.

tion, subject to the constitutional standards of due process." *State* v. *Barrett,* 205 Conn. 437, 452, 534 A.2d 219 (1987). Because the trial court failed to consider the state constitutional claim, the record necessarily lacks sufficient factual findings to which we might apply any newly articulated state constitutional standard.[19] A remand for factual determinations would be inappropriate. *State* v. *Medina,* supra, 228 Conn. 301. We decline, therefore, to decide the defendant's state constitutional claim.

### III

The defendant concedes that the evidence presented at trial might support a conviction of criminally negligent homicide,[20] but claims that it was insufficient to justify the conviction for manslaughter in the first degree. The defendant argues that the evidence cannot sustain the verdict because the evidence as to the existence of justified self-defense was neither conflicting nor tended to disprove it. We do not agree.

We employ a two part analysis when reviewing a sufficiency of the evidence claim. *State* v. *Rivera,* 32 Conn. App. 193, 200, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). First, we construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz,* 226 Conn. 20, 31, 627 A.2d 862 (1993). Second, we " 'determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt.' " *State* v. *Hooks,* 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). "In this process of review, it does not diminish the proba-

---

[19] The defendant bears the responsibility for providing an adequate record for his claim of constitutional error. *State* v. *Medina,* supra, 218 Conn. 301 n.22.

[20] General Statutes § 53a-58 (a).

tive force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.'' (Internal quotation marks omitted.) *State* v. *Salz,* supra, 31.

The jury's province as the sole trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray,* 221 Conn. 713, 721, 607 A.2d 391, cert. denied,     U.S.    , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). The jury also has the sole and absolute responsibility to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Pinnock,* 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Hooks,* supra, 30 Conn. App. 239.

It is the state's burden to establish the guilt of the accused by proving beyond a reasonable doubt each material element of the crime charged. *State* v. *Maxwell,* 29 Conn. App. 704, 708–709, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied,     U.S.    , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993). When self-defense is raised by way of justification, the state has the burden of disproving that defense beyond a reasonable doubt. General Statutes § 53a-12 (a); *State* v. *Jarrett,* 218 Conn. 766, 772, 591 A.2d 1225 (1991). The defendant claims that the state failed to present sufficient evidence to disprove beyond a reasonable doubt the elements of self-defense as set forth in General Statutes § 53a-19 (a).[21]

At trial, the defendant claimed that he had not stabbed his brother, but, if he had, he had acted in self-defense. The sole question raised is whether there was sufficient evidence presented by the state to have allowed the jury to reject the defendant's claim of self-defense. We conclude that there was.

---

[21] See footnote 8.

As discussed in part I of this decision, a person is justified in using deadly physical force as self-defense only when he reasonably believes such force is necessary because another person is using or about to use deadly physical force or inflicting or about to inflict great bodily harm. General Statutes § 53a-19 (a). This is a question of fact for the trier. The issue is what the defendant himself reasonably believed. *State* v. *Garrison,* 203 Conn. 466, 470, 525 A.2d 498 (1987). "In evaluating a claim of self-defense, a trier of fact must first examine the danger that a defendant claims he faced. It is clear that here [t]he statute focuses on the [defendant's] claiming self-defense. It focuses on what he reasonably believes under the circumstances . . . . In evaluating the defendant's belief that he was faced with the imminent use of deadly physical force, the jury must first determine [what] the defendant believed . . . and then it must determine whether that belief was reasonable." (Citations omitted; internal quotation marks omitted.) *State* v. *Bellino,* 31 Conn. App. 385, 392–93, 625 A.2d 1381, cert. granted, 226 Conn. 917, 628 A.2d 988 (1993).

There were substantial facts from which the jury could have concluded that the defendant did not act in self-defense when he used deadly physical force. The defendant blocked the doors so the victim could not exit. He got a knife from the kitchen counter and grabbed the victim by the collar and jabbed at him with that knife. The victim retreated into the living room and the defendant followed. During the ensuing struggle, the defendant threatened the victim that he would stab the victim in the back if the victim did not release him.

It is the jury's right to accept some, none or all of the evidence presented. *State* v. *Raguseo,* 225 Conn. 114, 124, 622 A.2d 519 (1993). From these and other facts, we conclude that the state presented sufficient evidence for the jury to reject the defendant's claim

of self-defense. The cumulative effect of the evidence and the reasonable and logical inferences that the jury could have drawn from that evidence was more than sufficient to support the jury's conclusion, and demonstrates that the state met its burden of disproving the defense of justification.

The judgment is affirmed.

In this opinion the other judges concurred.