### STATE OF CONNECTICUT *v.* RALPH D. BYRD
### (14966)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued March 15—decision released June 20, 1995

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Mary H. Lesser*, assistant state's attorney, with whom were *Margaret Gaffney Radionovas*, assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, and *Robert Brunetti*, assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Ralph Byrd, was convicted, after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a)(1).[1]

---

[1] General Statutes § 53a-55 (a)(1) provides: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

The jury found the defendant guilty of manslaughter in the first degree as a lesser included offense of the charge of murder in violation of General Statutes § 53a-54a (a). Section 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prose-

He appealed from the trial court's judgment to the Appellate Court. The Appellate Court affirmed the judgment of the trial court. *State* v. *Byrd,* 34 Conn. App. 368, 385, 641 A.2d 818 (1994). We granted the defendant's petition for certification to consider whether the Appellate Court properly had concluded that: (1) the statutes governing the use of deadly physical force in self-defense had not incorporated any formerly existing common law right to kill in defense of a robbery; (2) the defendant's statement, given shortly after he had exhibited signs of physical illness and at a time when he had been emotionally upset, had not been involuntary within the meaning of the due process clause of the fourteenth amendment to the United States constitution as expounded in *Colorado* v. *Connelly,* 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); and (3) the record had been inadequate, pursuant to *State* v. *Medina,* 228 Conn. 281, 636 A.2d 351 (1994), to permit review of the defendant's claim that his statement had been given involuntarily in violation of article first, § 8, of the Connecticut constitution. *State* v. *Byrd,* 230 Conn. 909, 645 A.2d 1016 (1994). We also agreed to consider whether, if the record was adequate to permit review of this state constitutional claim, the Appellate Court should have concluded that the remaining prongs of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), had been satisfied and that the defendant's statements should have been excluded under the state constitution. Id. We affirm the judgment of the Appellate Court in part and remand this case to the trial court for an articulation.

cution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

The opinion of the Appellate Court fully describes the underlying facts of this case. *State* v. *Byrd,* supra, 34 Conn. App. 369–70, 377–79. They may be summarized briefly as follows. The defendant, his brother (victim) and another individual were involved in the sale of narcotics. The defendant had obtained forty vials of crack cocaine for their personal use and for sale to others. On the evening of the victim's death, while the defendant and the victim argued about how the drugs should be shared, the victim grabbed the drugs and put them in his pocket. The defendant attempted to stop the victim from leaving the premises and, in the ensuing struggle, fatally stabbed the victim in the back. The defendant then left the scene. Later, he turned himself in to the police.

At the police station, the defendant encountered members of his family and, upon hearing that his brother had died of the stab wounds, became very emotional. He repeatedly stated, "I killed my brother, my life is over." Thereafter, the defendant, crying and retching, was escorted into an interrogation room. He was given a towel and permitted to calm down for approximately one-half hour. Thereafter, the defendant was advised of his *Miranda*[2] rights, and he gave a detailed narrative of the events that had occurred. A detective typed the statement while the defendant spoke, and the defendant later read the typed version, confirmed that it was accurate, and signed it. Prior to trial, however, the defendant moved to suppress the statement, arguing that he had not knowingly and voluntarily waived his *Miranda* rights and that the statement had not been voluntarily given. Following a hearing, the trial court found that the defendant had not knowingly and voluntarily waived his *Miranda*

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

rights but that the statement itself had been voluntary. The trial court therefore granted the defendant's motion to suppress the statement. The state was allowed, however, to admit the defendant's statement for impeachment purposes after he had testified on his own behalf.

## I

The defendant first claims that the Appellate Court improperly determined that the common law privilege that a victim of a robbery need not retreat unless and until he has secured himself from all danger had been extinguished by General Statutes § 53a-19 (b) (1).[3] The defendant argues that "in circumstances where [a robbery victim] believes that he is in imminent danger of great bodily harm, [he] is not obliged to retreat but has the right to defend himself even to the extent of taking his assailant's life . . . ." The Appellate Court rejected this claim, reasoning that "our statutory scheme requires retreat in lieu of using deadly force,

___

[3] General Statutes § 53a-19 provides in pertinent part: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform."

except in certain delineated circumstances. . . . The underlying policy of the duty to retreat is that the protection of human life has a higher place in the scheme of social values than the value that inheres in standing up to an aggression." (Citations omitted; internal quotation marks omitted.) *State* v. *Byrd*, supra, 34 Conn. App. 374–75.

The defendant next claims that the Appellate Court improperly concluded that under *Colorado* v. *Connelly*, supra, 479 U.S. 167, " 'coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment' [to the United States constitution] even though the admissions may have been made by the defendant when he was mentally ill." *State* v. *Byrd*, supra, 34 Conn. App. 379. The Appellate Court concluded that "[t]he emotional state of the defendant and physical illness did not render the statement involuntary under *Colorado* v. *Connelly*, supra, 167." Id., 380.

After considering the briefs and arguments of the parties and examining the record on appeal, we conclude that the judgment of the Appellate Court with respect to these issues is correct and must be affirmed. These issues were properly resolved in the Appellate Court's thoughtful, comprehensive and unanimous opinion. Id., 374–80. It would serve no useful purpose for this court to repeat the discussion contained therein. See *Reichert* v. *Sheridan*, 233 Conn. 251, 253, 658 A.2d 96 (1995); *Talton* v. *Warden*, 231 Conn. 274, 275–76, 648 A.2d 876 (1994); *State* v. *Jacobson*, 229 Conn. 824, 828, 644 A.2d 331 (1994); *Board of Education* v. *State Board of Education*, 228 Conn. 433, 436, 636 A.2d 378 (1994).

## II

The defendant's next claim is that the Appellate Court improperly applied *State* v. *Medina*, supra, 228

Conn. 281, when it concluded that the record "lack[ed] sufficient factual findings to which we might apply any newly articulated state constitutional standard." *State v. Byrd*, supra, 34 Conn. App. 382. The defendant argues that the trial court made the necessary predicate factual findings to determine the voluntariness of the defendant's statement under the state constitution and consequently the record was sufficiently complete for the Appellate Court to review the issue. In this connection, the defendant urges us to reject the standard set forth in *Colorado v. Connelly*, supra, 479 U.S. 157, and to adopt the test for voluntariness stated in *State v. Smith*, 200 Conn. 465, 475–77, 512 A.2d 189 (1986). In *Smith*, we concluded that coercive police misconduct was not an essential predicate to a finding that a statement was involuntary. Id. We reasoned that "[s]tate action enters the picture . . . when a trial court permits the prosecution at a jury trial to utilize as evidence of guilt a confession which is extracted under circumstances that so overbear the individual's will as to render the statement involuntary, that is not the product of a rational intellect and a free will." (Internal quotation marks omitted.) Id., 477. Although *Smith* was decided pursuant to the federal constitution, the defendant asks us to adopt the test for voluntariness stated therein as a protection afforded criminal defendants under the state constitution.

We conclude that the trial court's ruling with respect to the voluntariness is unclear as to whether it applied the test set forth in *Colorado v. Connelly* supra, 479 U.S. 157, or whether it made its factual finding under the broader test outlined in *State v. Smith*, supra, 200 Conn. 477.[4] In order to evaluate fully the defendant's

---

[4] The trial court, after a full hearing on a motion to suppress the defendant's statement, ruled on the voluntariness of the defendant's statement from the bench as follows: "The Court is unable to reach the conclusion that there was [a knowing and voluntary waiver of the constitutional rights

state constitutional claim, it is essential that the trial court clarify its factual finding in this regard. "Where necessary to the proper disposition of the cause, this court may remand the case for a further articulation of the basis of the trial court's decision." *State* v. *Almeda*, 189 Conn. 303, 314, 455 A.2d 1326 (1983). Accordingly, we remand this case to the trial court for the purpose of articulating whether it found the defendant's statement to be voluntary because of the absence of police misconduct, or on the basis of the totality of the circumstances. If the trial court found voluntariness on the basis of the totality of the circumstances, then it should articulate specifically what facts it relied upon in making that finding.[5]

The judgment of the Appellate Court is affirmed in part and the case is remanded to that court with direction to remand to the trial court for articulation in accordance with this opinion.

---

set forth in *Miranda* v. *Arizona*, supra, 384 U.S. 436]. I will say that I am particularly troubled by the taking of the defendant's confession at a time when he was, obviously, emotionally and physically unwell.

"Certainly, he was in custody subject already to arrest on some other charge and it would seem that prudence would dictate that the statement would be deferred to a later hour.

"I don't condemn the police for their activities insofar as any affirmative conduct by the police. I do not find that the defendant's voluntariness was affected and, I refer to the matter of any threats or promises or a long period of grueling interrogation. The record does not reflect that that occurred.

"But, I cannot find on the evidence in the context of what occurred at the time in question, that the defendant effectively waived his *Miranda* rights. In short, I am unable to reach the conclusion that under all of the circumstances that pertained, that the State has sustained its burden and, therefore, the Motion to Suppress is granted."

[5] The defendant's fourth claim is that the Appellate Court should have determined the remaining prongs of *State* v. *Golding*, supra, 213 Conn. 239–40. Our remand in this case obviates the need for deciding this issue at this time.