# STATE OF CONNECTICUT *v.* JUAN FERNANDO RAMIREZ
## (AC 26143)

Schaller, McLachlan and Pellegrino, Js.

Argued December 6, 2006—officially released May 22, 2007

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Juan Fernando Ramirez, appealed from the judgment of conviction, following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] This court reversed the judgment and

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . . "

remanded the case for a new trial after having concluded that the trial court improperly excluded certain testimony. *State* v. *Ramirez*, 79 Conn. App. 572, 830 A.2d 1165, cert. denied, 267 Conn. 902, 838 A.2d 211, 212 (2003) (*Ramirez I*). After retrial, the court again rendered judgment of conviction against the defendant, following a jury trial on the same offense. The defendant then filed this current appeal, claiming that the court improperly admitted (1) a statement of his girlfriend, Erin Waye, which was given to Danbury police Detective James Terry at police headquarters, (2) opinion testimony of the state's expert witness, Patti LaMonica, (3) constancy of accusation testimony from the victim's mother[2] and (4) a letter the defendant wrote to his brother, Eddie Ramirez, which was seized by New York authorities while the defendant was incarcerated. We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts, as set forth in the opinion of this court in *Ramirez I*. "On June 25, 1999, the victim and her then boyfriend Johnny Ramirez, who is the defendant's brother, attended a party at the home of the defendant's parents. After consuming several drinks, the victim became ill. The defendant offered to escort the victim to the bathroom. When they reached the bathroom, the defendant remained with the victim while she vomited. . . . . The defendant then proceeded to force the victim to engage in sexual intercourse . . . . The victim repeatedly implored the defendant to stop, but did not have the strength to physically restrain him.

"The next morning, the victim awoke alone in a bed in the defendant's parents' home. When she awoke, she found that her clothing was in disarray. She ate

---

[2] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

breakfast with the defendant's family. At that time, she was not entirely certain what had transpired the previous night and who had been involved, so she did not say anything to anybody about the incident in the bathroom. Later, the defendant drove the victim and Johnny Ramirez to Johnny Ramirez's apartment. At that time, the victim was still confused about the events of the previous night. Johnny Ramirez later took the victim to her parents' home where she lived. . . .

"The next morning, the victim went to work. While she was at work, she realized she had been raped, but was not certain of the identity of her assailant. Later in the day, however, she became more confident that the defendant had raped her. She returned home, where she told her mother about the assault and called the police. They then went to the hospital, where she was examined and rape kit tests were performed.

"The defendant was later arrested in New York and taken to a correctional facility in that state. The authorities in New York subsequently delivered him into the custody of the Danbury police department. He was charged with sexual assault in the first degree and, after a six day trial, the jury returned a verdict of guilty." Id., 574–75. Additional facts will be set forth as necessary.

Because all of the defendant's claims challenge the court's admission of certain evidence, we begin by setting forth the applicable standard of review. "[O]ur standard of review for the trial court's evidentiary rulings depends on whether the claimed error is of constitutional magnitude. The court's ruling as to the nonhearsay character of the evidence is reviewed under a deferential abuse of discretion standard. . . . [I]f an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . .

When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Citation omitted; internal quotation marks omitted.) *State* v. *George J.*, 280 Conn. 551, 592, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). In a harmless error analysis, the question is "whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Internal quotation marks omitted.) *State* v. *Lewis*, 67 Conn. App. 643, 654, 789 A.2d 519, cert. denied, 261 Conn. 938, 808 A.2d 1133 (2002).

I

The defendant's first claim is that the court improperly admitted hearsay evidence consisting of a statement made by his girlfriend, Waye, which he claims was harmful error. We agree with the defendant that the state's exhibit was improperly admitted by the court, but we conclude, however, that this impropriety was harmless beyond a reasonable doubt.

The testimony at issue concerns a statement that Waye gave to Terry when she accompanied the defendant to the police station. Her statement indicates, inter alia, that the defendant had been with her all night on the night in question. Defense counsel objected to the admission of this statement on the grounds that it was hearsay and that the state did not demonstrate that Waye was unavailable to the state to testify as a witness. The state argued that it was not hearsay because the statement was not being offered for its truth; rather, it was being offered for the fact that it was said and was relevant evidence concerning the defendant's "consciousness of guilt . . . ." The court permitted the statement to be introduced into evidence on the ground that it was not hearsay. We conclude that the court's

admission of Waye's statement to the police was improper.

As a general rule, an out-of-court statement offered to establish the truth of the matter asserted is hearsay, and it is therefore inadmissible unless it falls within a recognized exception to the hearsay rule. *State* v. *Aaron L.*, 272 Conn. 798, 812, 865 A.2d 1135 (2005). The state claims that Waye's statement was offered not for its truth, but for a nonhearsay purpose, i.e., to demonstrate the consciousness of guilt of the defendant.

"[M]isstatements of *an accused,* which a jury could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt. This rule has only been applied, however, where the declarant of the *misstatement has been the defendant.*" (Emphasis in original.) *State* v. *Milner*, 206 Conn. 512, 519, 539 A.2d 80 (1988). As for statements by declarants other than the defendant, we have held that "[u]ndue pressure upon a witness, by bribery or intimidation, falls within the hearsay exception for admissions of a party by conduct. The conduct must be connected to the party himself . . . *by showing that he did the act or authorized it by words or other conduct.* Moreover, the circumstances of the act must manifest bad faith. . . . Evidence of undue pressure upon a witness . . . is admissible . . . on the theory that such conduct exhibits a consciousness of guilt." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Waterman*, 7 Conn. App. 326, 351, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

There is no evidence in the record that the defendant coerced, persuaded or otherwise authorized Waye to

give her statement to Terry. The record does not indi-
cate that Waye's statement was a product of undue
pressure imposed on her by the defendant, and because
Waye did not attend the trial, there is no testimony
from her on this issue. In short, the state did not present
any evidence to connect the defendant to Waye's state-
ment, and, therefore, the court's admission of Waye's
statement was improper.

The defendant raises another challenge to the impro-
priety of the court's evidentiary ruling on the ground
that admission of this evidence violated his right, under
the confrontation clause of the sixth amendment to the
United States constitution, to confront the witnesses
against him. To the extent that his constitutional claim
was not properly preserved, the defendant seeks review
under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823
(1989),[3] and the plain error doctrine.[4] *Golding* provides,
in relevant part, that "a defendant can prevail on a claim
of constitutional error not preserved at trial only if all
of the following conditions are met: (1) the record is
adequate to review the alleged claim of error; (2) the
claim is of constitutional magnitude alleging the viola-
tion of a fundamental right; (3) the alleged constitu-
tional violation clearly exists and clearly deprived the
defendant of a fair trial; and (4) if subject to harmless

---

[3] "It is well established that generally this court will not review claims
that were not properly preserved in the trial court." (Internal quotation
marks omitted.) *State* v. *Diaz*, 94 Conn. App. 582, 586–87, 893 A.2d 495,
cert. denied, 280 Conn. 901, 907 A.2d 91 (2006). At the trial, defense counsel
objected to the court's admission of Waye's statement, on the ground that
Waye was not available to the state as a witness. Although the defendant
did not make any confrontation clause arguments during the trial, and the
defendant's claim, therefore, has not been properly preserved, we conclude
that the record is adequate for review and that the claim is of constitu-
tional magnitude.

[4] In light of our analysis under *Golding*, we likewise conclude that plain
error review is not warranted because the defendant has not demonstrated
that he suffered manifest injustice. See *State* v. *Martinez*, 95 Conn. App.
162, 170 n.5, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. *The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.*" (Emphasis added.) Id., 239–40.

In order to determine which party bears the burden of demonstrating harm from that evidentiary impropriety, we must address the defendant's claim that the admission of the statement implicated the confrontation concerns at issue in *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). See *State* v. *George J.*, supra, 280 Conn. 595. In *Crawford* v. *Washington*, supra, 68, the United States Supreme Court held that when testimonial hearsay statements are at issue, the sixth amendment requires that (1) the declarant be unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant. See also *State* v. *Kirby*, 280 Conn. 361, 379, 908 A.2d 506 (2006). The determination of whether a statement is testimonial under *Crawford* is subject to plenary review. Id., 378. Our Supreme Court has recognized that testimonial hearsay statements have been defined as "pretrial statements that declarants would reasonably expect to be used prosecutorially" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." (Internal quotation marks omitted.) Id., 380.

The record indicates that on June 29, 1999, Terry went to the home of the defendant's parents and notified them that he wanted to speak to the defendant and the defendant's brother, Eddie Ramirez, with regard to an

incident that occurred at their home a few nights earlier.[5] That same night, Terry received a call from Eddie Ramirez. During this telephone conversation, Terry told Eddie Ramirez that he was investigating "a case of a sexual nature" and that he was looking into whether anyone had had contact with the victim on the night in question. Later that same night, Terry received a call from the defendant, who then went to the police station with his girlfriend and gave a statement to the effect of "not me. I wasn't there. It didn't happen." Waye's statement helped to corroborate the defendant's statement because she stated that the defendant had been with her all night.

Waye voluntarily gave a statement to Terry in connection with an investigation he was conducting into possibly criminal past conduct. See *State* v. *Kirby,* supra, 280 Conn. 383–87. Several years later in September, 2001, during the defendant's first trial, Waye then gave testimony concerning this statement, excerpts of which the defendant included as an appendix to his appellate brief in the current appeal. Because Waye's statement was made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial, the statement was testimonial in nature and therefore required evidence that Waye was not available to testify at the defendant's trial. The state provided no evidence of Waye's unavailability to testify, and it also did not provide the defendant with an opportunity to cross-examine Waye with regard to her statement prior to trial. The court's admission of Waye's statement, therefore, violated the defendant's right of confrontation pursuant to *Crawford.*

Upon review of the record, however, the defendant's claim fails under the fourth prong of *Golding* because

[5] By this point, Terry already had spoken with the victim and her then boyfriend, Johnny Ramirez.

the state has demonstrated that the error was harmless. We conclude that there is no reasonable likelihood that the challenged statement had any material bearing on the jury's finding that the defendant had committed the sexual assault against the victim as alleged by the state. The primary issue at the defendant's trial was not whether the defendant was with his girlfriend all night but, rather, whether he sexually assaulted the victim in violation of § 53a-70 (a) (1). Any weight that Waye's statement may have had on whether the sexual assault occurred must be considered in light of the other evidence presented at trial. Prior to the court's admission of Waye's statement as evidence, the jury heard testimony from the following witnesses: the victim; Sheila Mortara, the nurse who had assisted Victor Estaba, a physician, in treating the victim when she went to the hospital; the victim's mother; and Officer Joseph LeRose of the Danbury police department.

LeRose testified that he was responsible for ensuring the defendant's safe transport from New York to Connecticut. He further testified that he had a bag that contained the defendant's property and, as he was looking through the bag to prepare an inventory record of the defendant's personal belongings, he discovered a letter the defendant had written while under the care of the New York authorities. In that letter, the defendant asked his brother, Eddie Ramirez, to talk to the victim to see if she would be willing to accept $2000 to drop the sexual assault charges against the defendant. The jury then heard testimony from Mary Beth Raffin, a forensic expert, who testified concerning her analysis of the rape kit from the examination of the victim and the blood sample taken from the defendant. It is uncontroverted that the defendant was not with his girlfriend all night, as the rape kit tests and related DNA evidence demonstrate that he had a sexual encounter with the victim.

Finally, after objection by defense counsel, a redacted version of the defendant's letter to his brother, Eddie Ramirez, was read to the jury. The letter stated in relevant part: "Ed, if you can, can you have a talk with Johnny and ask him to go with you to go talk to that girl and see if you could change her mind. Can you see if she'll drop the charges? I'll give her $2,000.00 if she drops charges, all she has to do is not appear at the felony hearing. I'm worried about my girl . . . . *Remind her that she has to stick to her story, I was with her all night* . . . . Another way of solving this [is] by talking to that girl . . . I have $2,000.00 you can offer it to her if she drops the charges." (Emphasis added.)

It is clear that Waye's statement was merely cumulative evidence of what was already presented at trial through the court's admission of the defendant's letter. The defendant, in his own words, acknowledged both the *story* and the contents of that story, "I was with her all night," in his letter to his brother. "It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." (Internal quotation marks omitted.) *State* v. *Hinds*, 86 Conn. App. 557, 574, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005).

We also note that "[i]t is the jury's function . . . to weigh the evidence, pass on credibility and find facts; that responsibility belongs exclusively to the jurors as the sole triers of fact and credibility . . . ." (Internal quotation marks omitted.) *State* v. *Feliciano*, 74 Conn. App. 391, 397, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003). The jury was free to draw any reasonable inferences from the testimony and evidence presented. On the basis of our review of the record and the evidence presented to the court by the

state, we conclude that the state has demonstrated that the error was harmless beyond a reasonable doubt.

## II

The defendant's next claim is that the court improperly admitted the expert testimony of LaMonica. Specifically, the defendant claims that LaMonica's testimony was inadmissible because there was no factual basis for her testimony and the testimony lacked relevance. We disagree.

LaMonica testified that she currently teaches sexual assault nurse examiner courses at Quinnipiac University and that she is also a sexual assault nurse examiner. Concerning her experience with patients who have reported sexual assault, LaMonica testified: "Many people never disclose [sexual assault]. Many people disclose immediately or may disclose to a person, but . . . choose not to pursue it for a variety of reasons. . . . [W]e have patients who come in shortly after an assault; a day after; a week; a month; years. It's very individualized, based on many factors."

The defendant essentially argues that there was no factual basis for LaMonica's testimony because the victim testified that her delay in reporting the incident arose from her alcoholic intoxication rather than from a symptom of "rape-trauma syndrome." The defendant also argues that LaMonica's testimony was irrelevant because it was based on conjecture or speculation: "LaMonica's testimony regarding delays in reporting was not cast in terms of the 'reasonably probable' or 'common,' but simply noted that any outcome was possible . . . . "

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge

is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Ali*, 233 Conn. 403, 431, 660 A.2d 337 (1995).

The sole purpose of LaMonica's testimony was to establish that the reason for a victim's delay in reporting a sexual assault can stem from a variety of factors on the basis of the victim's individual circumstances. In the present case, the factor that prevented the victim from reporting the incident sooner was her intoxication. There is no authority for the defendant's proposition that intoxication cannot be considered as a factor in the delay of reporting a sexual assault, and the defendant did not provide any expert testimony to that effect.

Additionally, the defendant's reliance on *Aspiazu* v. *Orgera*, 205 Conn. 623, 632, 535 A.2d 338 (1987) (noting that expert opinion must be " 'reasonably probable' " and not based on conjecture or surmise), for the proposition that LaMonica's testimony was irrelevant, is misplaced. LaMonica's testimony that it was *possible* that a victim of a sexual assault would delay in reporting the incident was only to illustrate that a person in this situation could respond in a variety of ways. Her testimony was not an attempt to provide an expert opinion as to whether it was *reasonably probable* that a victim of a sexual assault would delay in reporting it.

We conclude that LaMonica's testimony focused on a subject that generally is not within the common knowledge and experience of the average juror. On the basis of her extensive experience with sexual assault victims, she presented a general description of the responses that are common among victims in these situations. LaMonica's testimony enabled the jury to find that if the victim in this case was a victim of a sexual assault, such a finding was not necessarily inconsistent with her delay in reporting it to the authorities. We

further conclude, therefore, that the court did not abuse its discretion in deciding that LaMonica's testimony would be helpful to the jury.

## III

The defendant's next claim is that the court improperly admitted the testimony of the victim's mother because the court failed to give the jury a limiting instruction with regard to the testimony. Specifically, the defendant claims that the court should have instructed the jury that the testimony was being admitted solely for the purpose of corroborating the victim's testimony and not for a substantive purpose, i.e., determination of guilt, and that such error was harmful to the defendant's case. Because the defendant did not object to any portion of the testimony of the victim's mother, and his argument for a limiting instruction is being made for the first time in this appeal, we decline to review his claim.

"Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Internal quotation marks omitted.) *State* v. *Sun*, 92 Conn. App. 618, 630, 886 A.2d 1227 (2005).

The record reflects that the defendant did not object to the testimony with which he now takes issue on

appeal, nor did he request a limiting instruction at trial.[6] "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) Id. Additionally, "[i]t *is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 70, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). For these reasons, we decline to review this unpreserved evidentiary claim.

## IV

The defendant's final claim is that the court improperly admitted the letter the defendant wrote to his brother, Eddie Ramirez, during his incarceration. Essentially, the defendant seeks review of this court's decision in *Ramirez I*, which held that the letter was admissible because the defendant had no reasonable expectation of privacy with regard to the letter. *State* v. *Ramirez*, supra, 79 Conn. App. 582–83. We decline to review this claim because the doctrine of res judicata, or claim preclusion, precludes the relitigation of the defendant's claim in this appeal.

"The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Both of the

---

[6] The testimony of the victim's mother satisfied the parameters of *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996) (en banc), which held that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator."

doctrines express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . It is well settled that the principles of collateral estoppel and res judicata apply to criminal as well as to civil cases. . . .

"Pursuant to the doctrine of res judicata, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 98 Conn. App. 695, 700–701, 911 A.2d 353 (2006), cert. denied, 281 Conn. 916, 917 A.2d 998 (2007).

Res judicata bars the relitigation of the claim that the defendant litigated fully and finally in the prior proceeding. Therefore, we will not review the defendant's claim, which he raised for a second time in the current appeal.

The judgment is affirmed.

In this opinion the other judges concurred.