STATE OF CONNECTICUT *v.* R.K.C.[1]
(AC 28834)

Harper, Lavine and Pellegrino, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued January 15—officially released April 7, 2009

*James B. Streeto,* assistant public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, R.K.C., was charged in a seven count information with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), with all counts relating to alleged incidents involving his minor stepdaughter at various times from 1997 through 2005. After a jury trial, the jury found the defendant not guilty of two counts of risk of injury to a child and one count of sexual assault in the first degree but found him guilty of two counts of risk of injury to a child and two counts of sexual assault in the second degree. The incidents for which the jury found the defendant not guilty occurred from 1997 to 1999 and involved allegations of improper touching. They included an incident when the victim was in bed and the defendant put his hands under the covers and placed a finger in her "butt," which he claimed involved his looking for a television remote control device. The counts of which the defendant was found guilty involved incidents that occurred in 2003 and 2005, and it is from that conviction that the defendant appeals.

The facts that the jury reasonably could have found are as follows. In 2003, when the victim was thirteen years old, the defendant, at the home that he shared with his wife (the victim's mother) and the victim's other siblings, improperly touched the victim's breasts and penetrated her vaginally with his penis at various times. In 2005, before the family moved to Georgia and

while the victim's mother was at work, the defendant attempted to have sexual intercourse with the victim, which she resisted. The defendant, however, did improperly touch the victim and digitally penetrated her vagina. The victim disclosed this incident to her mother, who then took her to stay with the defendant's sister. While there, the victim disclosed the defendant's sexual abuse to her maternal aunt, A. A called the department of children and families, which began an investigation that ultimately resulted in the defendant's arrest. Additional facts will be mentioned as required.

At the trial, the state was permitted to introduce the testimony from A, who testified that the defendant had attempted to have sexual contact with her prior to the incidents with the victim, when A was fourteen years old. In addition, the court permitted the state to offer expert testimony from a social worker, Donna Vitulano, as to the behavioral characteristics of sexually abused children. The court also allowed the testimony of the victim's mother and A to corroborate the accusations of the victim.

The defendant now appeals to this court on four grounds: (1) A's testimony as to her accusations involving the defendant was impermissible uncharged misconduct and, therefore, not admissible; (2) the court improperly admitted Vitulano's opinion testimony; (3) the court should have instructed the jury that the victim had a motive in testifying against him; and (4) the court's limiting instructions as to the constancy of accusation testimony were improper. We disagree with the defendant's claims and, accordingly, affirm the judgment of the trial court.

I

The defendant first claims that the court improperly allowed the testimony of A as to her accusations of sexual abuse involving the defendant. Specifically, the

defendant claims that it was improper to admit A's testimony that in late 1996 or early 1997, when she was fourteen years old, the defendant went into her room while she was sleeping, bit her breasts and tried to put his hand inside her pants. The defendant argues that A's testimony was impermissible uncharged misconduct and, therefore, not admissible. We disagree.

In *State* v. *DeJesus*, 288 Conn. 418, 470, 953 A.2d 45 (2008) (en banc), a decision by which this court is bound, our Supreme Court held that uncharged misconduct evidence is admissible in sex crime cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior.[2] The court concluded that uncharged sexual misconduct evidence would be allowed if it satisfied three factors: (1) it was relevant on the basis of its being "not too remote in time . . . similar to the offense charged; and . . . committed upon persons similar to the prosecuting witness"; (internal quotation marks omitted) id., 473; (2) its probative value outweighed its prejudicial effect; and (3) a limiting instruction was given to the jury. Id., 474.

In the present matter, the testimony of A satisfied the three factors articulated in *DeJesus*. First, as to relevance, A's testimony was not too remote, as it related to an incident occurring in late 1996 or early 1997, and the victim alleged that the first incident with the defendant occurred in 1997. The allegation was similar to the offense charged in that the defendant

---

[2] The defendant concedes that this court is bound to follow precedent of our Supreme Court but argues, nonetheless, to preserve his rights before the higher court, that *State* v. *DeJesus*, supra, 288 Conn. 418, should be reversed because it was wrongfully decided. See *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24, 857 A.2d 354 ("It is axiomatic that . . . this court [is] without authority to overrule the decisions of our Supreme Court. In the absence of direction by our Supreme Court, inferior courts must continue to adhere to its decisions."), cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

attempted to touch both A and the victim inappropriately while they were in bed. Additionally, A and the victim were both minor females related to the defendant's wife.

Second, the probative value of the uncharged misconduct outweighed the prejudicial effect of A's testimony. See *State* v. *John G.*, 100 Conn. App. 354, 364, 918 A.2d 986 ("[f]urthermore, striking similarities between the charged and uncharged misconduct, such as the nature of the crimes and the identity of the victims, make the evidence of prior misconduct highly probative"), cert. denied, 283 Conn. 902, 926 A.2d 670 (2007). Moreover, A's testimony would not unduly raise the jury's emotions causing prejudice to the defendant because A's testimony related to only one incident, whereas the victim testified about repeated and graphic abuse at the hands of the defendant. See *State* v. *Raynor*, 84 Conn. App. 749, 762, 854 A.2d 1133 (holding victim's testimony about one uncharged incident of improper touching unlikely to arouse prejudice in jury when graphic testimony of sexual assault already in evidence), cert. denied, 271 Conn. 935, 861 A.2d 511 (2004). Last, the court gave the jury a limiting instruction that A's testimony was to be considered solely for the purpose of motive and intent. Accordingly, on the basis of *DeJesus* and in light of the foregoing, we conclude that the court properly admitted A's testimony.

## II

The defendant next claims that the court improperly admitted Vitulano's expert opinion testimony. The defendant claims that Vitulano's testimony was inadmissible because it identified merely possible behaviors of child victims of sexual abuse instead of the more reasonably probable behaviors of such victims. Specifically, the defendant argues that Vitulano's testimony was too general in that she testified that any reaction

to sexual abuse was possible. He argues further that Vitulano's testimony answering hypothetical questions constituted a form of vouching for the credibility of the victim and, therefore, improperly swayed the jury. We disagree.

In *State* v. *Ramirez*, 101 Conn. App. 283, 295–96, 921 A.2d 702, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007), cert. denied, 552 U.S. 1109, 128 S. Ct. 895, 169 L. Ed. 2d 747 (2008), this court held that it was not an abuse of the trial court's discretion to allow the state's expert witness to testify that a delay in a victim's reporting of sexual abuse could stem from a variety of factors that are based on the individual's circumstances. *Ramirez* stated that "expert testimony should be admitted when: (1) the witness has special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) Id., 294–95. This court concluded that reasons for delay in reporting sexual abuse are not within the common knowledge and experience of the average juror and, therefore, would be helpful to the jury. Id., 295–96.

The present matter is indistinguishable from *Ramirez*. Like Vitulano, the expert in *Ramirez* "presented a general description of the responses that are common among victims in these situations." Id., 295. The expert in *Ramirez* testified that child victims of sexual abuse displayed many different characteristics and that immediate, delayed and incremental disclosure was common. As previously stated, characteristics of abuse victims are not generally within the common knowledge and experience of an average juror. Id.; see also *State* v. *Spigarolo*, 210 Conn. 359, 378, 556 A.2d 112 ("the consequences of the unique trauma experienced by minor

victims of sexual abuse are matters beyond the understanding of the average person"), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). Accordingly, Vitulano's testimony satisfied the requirements for admission of expert testimony because (1) she had special skill and knowledge as a social worker with extensive training and twenty-five years experience, (2) that skill or knowledge was not common to the jury, and (3) the testimony would be helpful to the jury in considering the issues presented. See *State* v. *Ramirez*, supra, 101 Conn. App. 294–95. We conclude, therefore, that it was not improper for the court to admit the testimony of Vitulano as to the general behavioral characteristics of child victims of sexual assault.

The defendant additionally argues that the court impermissibly allowed Vitulano to answer the state's hypothetical questions that exactly mirrored the facts of the present case. Specifically, the defendant argues that Vitulano's answers to the state's hypothetical questions vouched for the victim's credibility and usurped the function of the jury. We disagree.

Section 7-4 (c) of the Connecticut Code of Evidence allows for hypothetical questions to be posed "provided that the hypothetical question (1) presents the facts in such a manner that they bear a true and fair relationship to each other and to the evidence in the case, (2) is not worded so as to mislead or confuse the jury, and (3) is not so lacking in the essential facts as to be without value in the decision of the case. . . ." See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 7.8.1, p. 428; see also id., § 7.10.1, p. 433 ("Before a hypothetical question can be asked on direct examination, the facts on which it is based must be in evidence. . . . On direct examination, the question must contain only facts fairly within the evidence." [Citation omitted.]).

In the present matter, the state's use of hypothetical questions properly conformed with our code of evidence. The hypothetical questions posed by the state used facts that properly were in evidence, did not specifically reference the victim and did not elicit from Vitulano a statement as to the victim's credibility. Compare *State* v. *Christiano*, 228 Conn. 456, 459–63, 637 A.2d 382 (no error when expert answered hypothetical questions based on hypothetical victims in similar situation without specifically referencing victim), cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994) with *State* v. *Grenier*, 257 Conn. 797, 803 n.7, 778 A.2d 159 (2001) (error when expert specifically stated " '[the victim's] statements were very credible' "). We conclude, therefore, that the court properly allowed the expert's answers to the state's hypothetical questions.

## III

The defendant next claims that the court should have instructed the jury that the victim had a motive in testifying against the defendant. Specifically, the defendant claims that the victim's motivation in testifying was a critical factor in the jury's determination of the case. The defendant claims that the allegations made by the victim were false because she did not want to relocate with her family to Georgia. We are not persuaded.

In *State* v. *Keiser*, 196 Conn. 122, 133, 491 A.2d 382 (1985), our Supreme Court held that a defendant was not entitled to a requested jury instruction regarding a victim's possible motive for testifying unless there was evidence to support the defendant's allegation that the victim was a culpable party. In the present matter, as in *Keiser*, the defendant merely offered an uncorroborated theory that the victim lied about the abuse simply to avoid moving to another state with her family. As no actual evidence was offered to show that the victim was a culpable party, the court properly followed *Keiser*

and denied the defendant's request for a specific jury instruction.

## IV

Last, the defendant claims that the court's limiting instructions as to the constancy of accusation testimony were improper. The defendant specifically takes issue with the court's instruction as follows: "Under our law, those witnesses cannot testify as to *all the details*, if in fact there were such details, but can only give a general statement just to confirm and corroborate the complaining—that the complaining witness did say those things." (Emphasis added.) He claims that the court's instruction implied that there were considerable, additional details that the jury was not told and, therefore, left the jury with the impression that the victim's allegations were likely to be true. We disagree.

In *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), our Supreme Court restricted the constancy of accusation doctrine. Previously, the doctrine had allowed a corroborating witness to testify as to the complaint and the details of the complaint once the victim had testified regarding the sexual assault and the identity of the person to whom the assault was disclosed. Id., 297. In *Troupe*, however, our Supreme Court held that a constancy of accusation witness may testify, not as to the details of the complaint, but only as to the fact and timing of the victim's complaint. Id., 304. It further concluded that, should additional details be necessary, they are limited to only those details that will associate the victim's complaint with the pending charge, such as the time and place of the attack or the identity of the alleged attacker. Id.

Our careful review of the record in this matter leads us to the conclusion that the court's instructions did not imply that there were additional details of which the jury was not being told or that the jury assumed

there were. The court specifically stated in its instruction to the jury: "[T]hose witnesses cannot testify as to all the details, *if in fact there were such details*, but can only give a general statement just to confirm and corroborate the complaining . . . ." (Emphasis added.) Further, the court instructed the jury that the out-of-court statements made to the witnesses were not to be considered to prove the truth of the matter asserted but, rather, were to be used to determine if the victim's statements made out of court were consistent with her statements made in court. The jurors also were instructed to consider only the evidence from the testimony of the witnesses and the exhibits that were admitted and that they must follow all of the court's limiting instructions. "A jury is presumed to follow the court's instructions, absent clear indication to the contrary." *State* v. *Mitchell*, 110 Conn. App. 305, 314, 955 A.2d 84, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008). We conclude, therefore, that the jury followed the court's instructions and that there was no implication by the court of additional facts outside of the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.