******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

IN RE WALKER C. III*
(AC 43068)

Lavine, Devlin and Bear, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court terminating her parental rights with respect to her minor child. The trial court found, pursuant to statute (§ 17-112 (j) (3) (B) (i)), that the mother had failed to achieve a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the child's life. She claimed that the court, inter alia, erroneously found that the child's attorney argued in favor of the termination of the mother's parental rights and that such error was not harmless because there was insufficient evidence tending to support termination of parental rights rather than permanent transfer of guardianship. *Held*:

1. The respondent mother could not prevail on her claim that the trial court erroneously stated the position of the child's attorney and that such statement was not harmless error, as such claim did not challenge the court's underlying factual findings or its conclusion that the petitioner proved by clear and convincing evidence the adjudicatory ground of failure to rehabilitate; although the trial court did not accurately set forth the position of the child's attorney with respect to the termination of the mother's parental rights, and did not set forth such counsel's statements favoring a possible permanent transfer of guardianship as an alternative to termination, the court's erroneous one sentence summary of the final position of the child's attorney was not a finding by the trial court, as it was not based on evidence, instead, it was a statement made by counsel in argument to the court, and, even if the court's summary of such counsel's position was to be considered a finding, any error deriving from the finding was harmless as there was abundant evidence of the mother's multiyear history of alcohol and substance abuse and her lack of cooperation with rehabilitative services to provide support for the trial court's ultimate finding by clear and convincing evidence that termination of the mother's parental rights was in the best interest of the child.

2. The respondent mother could not prevail on her claim that the trial court erred by not ordering a permanent transfer of guardianship to the foster mother on the basis that there was considerable trial evidence tending to show that a permanent transfer of guardianship was in the child's best interest, as the mother's claim did not arise from anything she filed, offered into evidence, or argued during the trial; instead, the mother's claim arose from argument of the child's attorney that the foster mother preferred a permanent transfer of the child's guardianship rather than termination of the mother's rights, a claim that was contrary to the mother's position during trial that she had rehabilitated and, therefore, the petition to terminate her parental rights should have been denied, and this court does not looked favorably on a party's obvious, contradictory change of position on appeal and, accordingly, to allow the mother to reverse her trial court strategy and argue something completely different before this court on appeal would amount to sanctioning a trial where the representations to court and other counsel did not count.

Argued December 11, 2019—officially released February 6, 2020**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters and tried to the court, *Hoffman, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Joshua Michtom*, assistant public defender, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Judith C. Dayner*, for the minor child.

*Opinion*

BEAR, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Walker C. III (child). In the termination of parental rights petition, the petitioner, the Commissioner of Children and Families (commissioner), alleged that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[1] On appeal, the respondent claims that (1) the court's finding that the child's attorney argued in favor of the termination of the respondent's parental rights is clearly erroneous, (2) the court's error was not harmless because there was insufficient evidence tending to support termination of parental rights over permanent transfer of guardianship, and (3) there was considerable evidence tending to show that a permanent transfer of guardianship was in the child's best interest.[2] We affirm the judgment of the trial court.

The trial court found the following facts by clear and convincing evidence. The respondent is the mother of the child and one other child, an older female half-sibling (daughter). The respondent has been involved with the Department of Children and Families (department) since 2009.[3] Since that time, she continuously has denied that she has alcohol and substance abuse problems, despite several mandated reporters having informed the department that they had observed her to be intoxicated while in the presence of one or both children and while driving with them in her vehicle, thus demonstrating unsafe and otherwise inadequate supervision of her children. More specifically, on February 12, 2015, a report was made stating that the respondent arrived at her daughter's school smelling of alcohol and marijuana. A few months later, on June 3, 2015, the Hartford Police Department investigated the respondent's allegation that her daughter's father was sexually abusing the daughter, and the officer who investigated the allegation observed that the respondent appeared to have been intoxicated. On May 31, 2016, employees from the daughter's school reported that the respondent was intoxicated, and that the child's diaper was leaking and filthy.[4] Again, a few months later, on September 16, 2016, the respondent arrived at the daughter's school in an intoxicated condition, reportedly slurring her words. School personnel observed that she had urinated on herself, and had left her car running while the child was hanging out of the window. The respondent, as a result, was arrested for risk of injury to a child and breach of the peace.

The respondent was arrested for a second time on May 11, 2017, after she left the scene of a motor vehicle

crash. The police report stated that she "reeked" of alcohol, could barely stand up, and that one of her children was in the back seat of her vehicle. Additionally, she failed a field sobriety test.[5]

Approximately one year later, the Hartford Police Department executed a search warrant on the respondent's home for evidence that the respondent father was a dealer of crack cocaine and marijuana, both of which were found in the home along with $3510 in cash and a Beretta 950BS .25 caliber semiautomatic pistol. The respondent father was arrested in connection with the incident, but the respondent was not. That same day, the department visited the respondent's home and reported that not only did she appear to be under the influence of alcohol, but she also did not disclose the earlier search of her home or the arrest of the respondent father.

Since its first contact with her in 2009, the department sought multiple times to engage the respondent in services aimed at treating her alcohol abuse and dependence and other issues. The respondent was referred to, among other things, group sessions at the Wheeler Clinic, parenting services at Radiance Innovative Services, therapy at the Community Renewal Team Behavioral Health Program, and therapy at My People's Clinical Services. The department received several reports from service providers that the respondent failed to understand how her alcohol abuse and behavior affected her and the safety of her children. The respondent missed or avoided many of the scheduled sessions. For example, over the course of one of her treatment programs, the respondent was scheduled to submit forty-five random urine screenings, but she completed only thirteen of them.

The following procedural history is relevant to the present appeal. On September 19, 2016, the commissioner filed a neglect petition on behalf of the child. On September 22, 2016, the commissioner sought an ex parte order of temporary custody of the child, which was granted. That order was sustained on October 7, 2016, after a hearing. On February 8, 2017, the court found the child neglected, and returned the child to the care of the respondent under an order of protective supervision. The court issued specific steps for the respondent on February 8, 2017, including an order that she not consume alcohol or have alcohol in her home.

On May 16, 2017, the commissioner filed a second motion for temporary custody, which was granted and then sustained on May 26, 2017. The court modified the disposition from protective supervision to commitment. The court ordered new specific steps for the respondent. On September 14, 2017, the court adjudicated the child neglected. On June 7, 2018, the petitioner filed a petition for termination of the respondent's parental rights with respect to the child on the ground of her

failure to rehabilitate as set forth in § 17a-112 (j) (3) (B) (i). The petitioner sought to be appointed statutory parent for the child after termination occurred. The petitioner did not check the box on the petition seeking an appointment as guardian of the person of the child. Therefore, the petitioner's sole prayer for relief in its petition was that the court terminate the parental rights of the respondent and appoint a statutory parent for the child.

On December 3, 2018, the trial commenced and concluded. On December 7, 2018, the respondent filed a motion to open the evidence to present testimony from an additional witness, which was granted by the court on December 20, 2018. On January 17, 2019, the respondent presented additional evidence, followed by closing argument. On January 31, 2019, pursuant to a request from the attorney for the child, the court heard testimony from a department worker, admitted into evidence a report relating to the position of the foster mother concerning a disposition of permanent transfer of guardianship of the child instead of the termination of the respondent's parental rights, and heard further arguments by the parties.

On March 20, 2019, the court issued its memorandum of decision. It concluded that the department had proved, by clear and convincing evidence, the ground for termination set forth in § 17a-112 (j) (3) (B) (i), that the respondent had failed to rehabilitate to such a level that would avoid the application of the statute to her, that her conduct was unlikely to change within a period sufficient to have the child safely returned to her and, that after consideration of the seven factors set forth in § 17a-112 (k), it was in the child's best interest for the court to terminate the respondent's parental rights. This appeal followed. Additional facts will be set forth as necessary.

I

The respondent claims that (1) the trial court's memorandum of decision contains a clearly erroneous finding that the child's attorney argued in favor of the termination of parental rights, and (2) that finding was not harmless.

"The standard for termination of parental rights in a child is well known. A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j) (3)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase . . . [in which] the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Quamaine K.*, 164 Conn.

App. 775, 782, 137 A.3d 951, cert. denied, 321 Conn. 919, 136 A.3d 1276 (2016). On appeal, with respect to the dispositional phase, "we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] *only* if the court's findings are clearly erroneous." (Emphasis added.) *In re Athena C.*, 181 Conn. App. 803, 811, 186 A.3d 1198, cert. denied, 329 Conn. 911, 186 A.3d 14 (2018).

With respect to the harmless error analysis, our Supreme Court has held "that not every error is harmful. . . . [B]efore a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful." *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 295, 838 A.2d 135 (2004). "[T]he question is whether the trial court's error was so prejudicial as to deprive the [respondent] of a fair trial, or, stated another way, was the court's [finding], though erroneous, likely to affect the result?" (Internal quotation marks omitted.) *State* v. *Ramirez*, 101 Conn. App. 283, 287, 921 A.2d 702, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007), cert. denied, 552 U.S. 1109, 128 S. Ct. 895, 169 L. Ed. 2d 747 (2008).

In this appeal, the respondent does not challenge the court's underlying factual findings or its conclusion that the petitioner proved by clear and convincing evidence the adjudicatory ground of failure to rehabilitate. Rather, the respondent claims that the trial court's statement in its memorandum of decision that the attorney for the child supported termination of the respondent's parental rights was clearly erroneous and that the error is not harmless. After reviewing the record, we conclude that the trial court did not accurately set forth the position of the attorney for the child with respect to the termination of the respondent's parental rights, and did not set forth such counsel's statements favoring a possible permanent transfer of guardianship as an alternative to termination. We further conclude, however, that the court's erroneous summary of such counsel's position was not a finding, because it was not based on any evidence,[6] but instead was a statement made by such counsel in argument to the court. In any event, even if the court's summary of such counsel's position is to be considered a finding, any error deriving from the finding was harmless as there was abundant clear and convincing evidence to warrant the termination of the respondent's parental rights.

"It is axiomatic that a trial court's factual findings are accorded great deference. Accordingly, an appellate tribunal will not disturb a trial court's finding [regarding the] termination of parental rights . . . unless that finding is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [Additionally] [o]n appeal, our function is

to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Lukas K.*, 120 Conn. App. 465, 484–85, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011).

The trial court wrote a thirty-four page memorandum of decision. In this appeal, the respondent challenges only one sentence in the court's memorandum: "At the conclusion of the trial, the attorney for the minor child requested the court to terminate the parental rights of [the respondent] in light of [her] failure to rehabilitate as it is in [the child's] best interest to do so." The respondent argues that the court's "finding" is not supported by the record; rather, she asserts that the attorney for the child stated that she would not support termination of the respondent's parental rights over the permanent transfer of the child's guardianship.

At the conclusion of the second day of trial, counsel for the parties delivered their closing arguments. It was then that the attorney for the child stated: "[O]n behalf of [the child] I do believe the state has made [its] case as far as clear and convincing evidence in terms of the adjudicatory phase of the trial." The attorney for the child stated that the foster mother was interested in a permanent transfer of guardianship rather than a termination of parental rights.[7] The attorney then stated: "I would hesitate on behalf of [the child] to say strongly it is in his best interest to terminate the parental rights given the new information . . . ."

Approximately two weeks later, the court opened the evidence to hear the testimony of a department worker, allowed into evidence a report only for a limited purpose, and allowed additional argument regarding prior discussions with the foster mother about her views on a permanent transfer of guardianship. The reason for the additional hearing was to clarify the statements made by the child's attorney that the foster mother was interested in a permanent transfer of guardianship and not a termination of parental rights followed by adoption.[8] At the conclusion of the testimony, the attorney for the child argued to the court that a permanent transfer of guardianship was in the child's best interest instead of the respondent's termination of parental rights. Specifically, the attorney for the child argued: "I think that a permanent transfer of legal guardianship makes more sense. . . . I really feel that it's in . . . [the child's] best interest to honor [the foster mother's position] and not to pretty much force something on

to her that isn't clearly what she prefers. And there's a reason why [General Statues § 46b-129] was enacted, the permanent transfer of guardianship . . . for situations . . . precisely like this where you have a family that's close and they do not want to disrupt the legal relationships of who is the parent and who isn't. And that is what we have here." We conclude that the court's one sentence summary of the final position of the attorney for the child in her closing argument concerning the attorney's preference for guardianship instead of termination is inaccurate and, thus, is erroneous, but it is not a finding. Even if we were to conclude that such summary statement constituted a clearly erroneous finding, the error is harmless error for the following reasons.

With respect to the dispositional phase, the court made the statutory findings required by § 17a-112 (k), which the respondent has not challenged on appeal, including that the respondent had made insufficient efforts or adjustments to her individual circumstances, conduct, or condition to make it in the best interest of the child to return to her care in the foreseeable future. The court also found that the respondent continued to have unresolved issues that impeded her ability to safely and appropriately provide care for the child. The court found that the respondent had failed to engage honestly in long-term substance abuse treatment, and to demonstrate her ability to maintain her sobriety by effectively engaging in treatment. In its best interests analysis, the court stated that it considered, inter alia, the child's interest in sustained growth, chance for development, his well-being, the continuity and stability of his environment, and his age and needs, the length and nature of his stage of foster care, his contact or lack thereof with the respondent, and his genetic bond with her. The court also balanced the child's intrinsic need for stability and permanency against the potential benefits of maintaining a connection with his biological parents.

The respondent's multiyear history of alcohol and substance abuse, and other issues, and her lack of cooperation with and benefit from multiple offers of therapeutic and rehabilitative services is relevant to, and provides overwhelming support for, the court's ultimate finding, by clear and convincing evidence, that the termination of her parental rights was in the best interest of the child.

## II

The respondent next claims that the trial court erred by not ordering a permanent transfer of guardianship to the foster mother. Specifically, her claim is that the court improperly granted the termination of her parental rights when there was considerable trial evidence tending to show that a permanent transfer of guardianship was in the child's best interest. The petitioner responds that we should not consider the respondent's

permanent transfer of guardianship claim because it does not arise from anything she filed, offered into evidence, or argued during the trial. Additionally, the petitioner contends that neither the petitioner nor the attorney for the child offered evidence, during trial, relating to a permanent transfer of guardianship of the child. The respondent's guardianship claim, thus, is based solely on the argument of the attorney for the child that the foster mother preferred a permanent transfer of the child's guardianship to her rather than termination of the respondent's rights to the child.[9] The petitioner argues that, contrary to the respondent's position in this appeal, her position during trial was that she had rehabilitated and, therefore, the termination of parental rights petition, which contained the sole ground of failure to rehabilitate pursuant to § 17a-112 (j) (3) (B) (i), should be denied. The petitioner asserts that the respondent also argued to the trial court that the department failed to satisfy the reasonable efforts prong of § 17a-112 (j) (1). The petitioner further asserts in its brief that the respondent did not file a motion for permanent transfer of guardianship, and that she specifically opposed the suggestion made by the child's attorney for a disposition of guardianship when it was raised on January 17, 2019.[10] Finally, the petitioner argues that the evidence during the first trial day on December 3, 2018, established that the foster mother was, in fact, willing to serve as the adoptive parent for the child and was willing to consider an "open adoption."[11]

This court has not looked favorably on a party's obvious, contradictory change of position on appeal. "As we have expressed on a number of occasions, we generally disfavor permitting an appellant to take one legal position at trial and then take a contradictory position on appeal." *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 724 n.11, 197 A.3d 1000 (2018). "[A] party cannot be permitted to adopt one position at trial and then . . . adopt a different position on appeal." *Szymonik* v. *Szymonik*, 167 Conn. App. 641, 650, 144 A.3d 457, cert. denied, 323 Conn. 931, 150 A.3d 232 (2016). Similarly, this court has stated that "[o]rdinarily appellate review is not available to a party who follows one strategic path at trial and another on appeal, when the original strategy does not produce the desired result. . . . To allow the [party] to seek reversal now that [her] trial strategy has failed would amount to allowing [her] to induce potentially harmful error, and then ambush the [opposing party and the court] with that claim on appeal." (Internal quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013); see also *Buxenbaum* v. *Jones*, 189 Conn. App. 790, 811–12, 209 A.3d 664 (2019); *In re Kyara H.*, 147 Conn. App. 829, 841 n.7, 83 A.3d 1249, cert. denied, 311 Conn. 923, 86 A.3d 466 (2014); *In re James L.*, 55 Conn. App. 336, 348–49, 738 A.2d 749, cert. denied, 252 Conn. 907, 743 A.2d 618

(1999). In the present case, to allow the respondent to reverse her trial court strategy and to argue something completely different before us on appeal amounts to sanctioning a trial where representations to the court and other counsel do not count, which we will not permit.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 6, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the child's father. Because the father has not appealed from the judgment of the trial court, we refer in this opinion to the respondent mother as the respondent. We refer, however, occasionally to the child's father as the respondent father.

[2] This appeal is the first time the respondent claims that the trial evidence demonstrated that a permanent transfer of guardianship was in the child's best interest, rather than a termination of her parental rights.

[3] The respondent's parental rights with regard to her daughter were addressed in separate proceedings.

[4] In connection with that incident, the respondent reported to the department that she drank Hennessy cognac regularly and that, on May 31, 2016, she drank a cup of it before she went to the school.

[5] As a result of the respondent's arrest, she pleaded guilty to the charges in connection with the incident. She was sentenced on May 31, 2017, to six months of incarceration, execution suspended, and two years of probation.

[6] "The arguments of counsel are not evidence." *State* v. *Braswell*, 145 Conn. App. 617, 637 n.13, 76 A.3d 231 (2013), aff'd, 318 Conn. 815, 123 A.3d 835 (2015).

[7] The attorney for the child seemingly based her recommendation to the court on what she appears to have believed were the foster mother's wishes. The petitioner claims that the position of the foster mother, as testified to by a department worker, was "that she would agree to a permanent transfer of guardianship but in the event that the court ruled that it was a [termination of parental rights] with adoption, she would adopt." Because the court granted the termination of parental rights as requested by the petitioner in the pending petition, the reasonable conclusion to be drawn from the testimony of the worker is that, despite what the child's attorney argued, the foster mother was willing to proceed with the adoption after the court determined that the termination of the respondent's parental rights was in the best interest of the child.

[8] The state called a social worker to testify as to her interactions with the foster mother. The social worker testified that members of the department had several conversations with the foster mother who did not object to a permanent transfer of guardianship. The petitioner, however, preferred termination of the respondent's parental rights, which was the sole focus of the petition and trial. The social worker's testimony and the report were the only evidence presented on the third day. No petition or motion for a permanent transfer of guardianship had been filed in the case by any party, and it was not referred to during the trial; therefore, the issue, as previously noted, was not properly before the court. See, e.g., *Connolly* v. *Connolly*, 191 Conn. 468, 475–78, 464 A.2d 837 (1983); see also *In re Nasia B.*, 98 Conn. App. 319, 329, 908 A.2d 1090 (2006) ("[t]he purpose of requiring written motions is not only to provide for the orderly administration of justice, but also to fulfill the fundamental requirement of due process of law"); *Berglass* v. *Berglass*, 71 Conn. App. 771, 783, 804 A.2d 889 (2002) (same). As previously noted, the petitioner's sole prayer for relief in its petition was that the court terminate the parental rights of the respondent and appoint a statutory parent for the child. The petitioner did not request the appointment of a guardian of the person of the child.

[9] The attorney for the child agreed that the petitioner had proven the § 17a-112 (j) (3) (B) (i) failure to rehabilitate adjudicatory ground to terminate the respondent's parental rights. Her statements related to the child's best

interest in the dispositional portion of the case.

[10] The respondent initially objected to an additional study by the department alleged to relate to the issue of guardianship, but eventually agreed to allow the exhibit to enter into evidence for the limited purpose of clarifying what the attorney for the child was referring to in her closing argument.

[11] A genetic parent may contract with adopting parents, prior to the adoption, for the continued right to visit the adopted child so long as visitation continues to be in the best interest of the child. See *Michaud* v. *Wawruck*, 209 Conn. 407, 414–15, 551 A.2d 738 (1988). Such agreements are often referred to as "open adoption agreements." See *In re Christopher G.*, 118 Conn. App. 569, 572 n.6, 984 A.2d 1111 (2009).

[12] Additionally, because the respondent's new claim on appeal relating to a permanent transfer of guardianship was not raised by her during the trial, the respondent has failed to provide an adequate record for review by this court. Accordingly, this claim fails. See *In re Anthony L.*, 194 Conn. App. 111, 219 A.3d 979, cert. denied, 334 Conn. 914,     A.3d     (2019) (claim not reviewable because not raised during trial, resulting in inadequate record).